**E-FILED**
Thursday, 03 December, 2015  03:13:11 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MICHELE VAN HISE, individually and on behalf of all others similarly situated, | | Case No. |
| Plaintiff, | | |
| v. | | |
| BLOOMIN' BRANDS, INC., | | Filed Electronically |
| Defendant. | | |

**CLASS ACTION COMPLAINT FOR PERMANENT INJUNCTION**
**REQUIRING THE REMOVAL OF ACCESS BARRIERS AND**
**CHANGES TO CORPORATE POLICY PURSUANT TO 42 U.S.C. § 12188(a)(2)**

COMES NOW, Michele Van Hise, ("Plaintiff") on behalf of herself and all others similarly situated and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action individually and on behalf of all others similarly situated against Bloomin' Brands, Inc. ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots at various public accommodations owned, operated, controlled and/or leased by Defendant ("Defendant's facilities").

2. Plaintiff is a paraplegic and is limited in the major life activity of walking, which has caused her to be dependent upon a wheelchair for mobility.

3. Plaintiff has patronized Defendant's facilities in the past, and intends to continue to patronize Defendant's facilities. However, unless Defendant is required to remove the access

barriers described below, and required to change its policies so that access barriers do not

reoccur at Defendant's facilities, Plaintiff will continue to be denied full access to those facilities

as described, and will be deterred from fully using Defendant's facilities.

4.      The ADA expressly contemplates injunctive relief aimed at modification of a

policy that Plaintiff seeks in this action.  In relevant part, the ADA requires:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order
> to alter facilities to make such facilities readily accessible to and usable by
> individuals with disabilities….Where appropriate, injunctive relief shall also
> include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

5.      Consistent with 42 U.S.C. § 12188(a)(2) Plaintiff seeks a permanent injunction

requiring:

> a)  that Defendant remediate all parking and path of travel access barriers at its
>     facilities, consistent with the ADA;
>
> b)  that Defendant change its corporate policy so that the parking and path of travel
>     access barriers at its facilities do not reoccur; and,
>
> c)  that Plaintiff's representatives shall monitor Defendant's facilities to ensure that
>     the injunctive relief ordered pursuant to Paragraph 5(a) and 5(b) has been
>     implemented and will remain in place.

6.      Plaintiff's claims for permanent injunctive relief are asserted as class claims

pursuant to Fed. R. Civ. P. 23(b)(2).  Fed. R. Civ. P. 23(b)(2) was specifically intended to be

utilized in civil rights cases where the Plaintiff seeks injunctive relief for his own benefit and the

benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment

to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party
> has taken action or refused to take action with respect to a class, and final relief of
> an injunctive nature or a corresponding declaratory nature, settling the legality of
> the behavior with respect to the class as a whole, is appropriate . . . . Illustrative
> are various actions in the civil rights field where a party is charged with

discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

7.     While Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(b)(2), class certification is plainly not a prerequisite to her ability to obtain permanent injunctive relief, as is expressly provided for by the plain language of the ADA.  Instead, Plaintiff seeks the certification of a class simply for purposes of judicial economy.

### THE ADA AND ITS IMPLEMENTING REGULATIONS

8.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

9.     The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

10.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities.  42 U.S.C. § 12181-89.

11.     Defendants are required to remove existing architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR 36.304(a) and 42 U.S.C. Section 12182(b)(2)(A)(iv); in the alternative, if there has been an alteration to a defendant's places of public accommodation since January 26, 1992, the defendant is required to ensure to the maximum extent feasible, that the altered portions of the facilities are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1992, as defined in 28

CFR 36.401, then the defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

12.     Defendant owns, operates, controls and/or leases places of public accommodation.

13.     Defendant's facilities are not fully accessible to, and independently usable by individuals who use wheelchairs.

14.     While Defendant has centralized management policies regarding ADA compliance, its ADA compliance policies are inadequate in both their conception and implementation, and Defendant's facilities continue to be inaccessible to, and not independently usable by, individuals who use wheelchairs.

15.     Even if remediated, the access barriers at Defendant's facilities will reoccur absent a change in Defendant's corporate policy.

## JURISDICTION AND VENUE

16.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

17.     Plaintiff's claims asserted herein arose in this judicial district.

18.     Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

19.     Plaintiff, Michele Van Hise, is and, at all times relevant hereto, was a resident of Charleston, Coles County, Illinois.  As described above, as a result of her disability, Plaintiff relies upon a wheelchair for mobility.  She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

4

20.    Defendant Bloomin' Brands, Inc., is a Delaware corporation with its principal place of business located at 2202 North West Shore Boulevard, Suite 500, Tampa, Florida 33607.

21.    Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## VIOLATIONS AT ISSUE

22.    Plaintiff has visited Defendant's facility located at 2402 North Prospect Avenue, Champaign, Illinois (the "Subject Property"), where she experienced unnecessary difficulty and risk due to excessive slopes purportedly accessible parking spaces.

23.    On Plaintiff's behalf, investigators examined multiple locations owned and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant's ADA compliance policies are inadequate in both their conception and implementation:

   a)  2402 North Prospect Avenue, Champaign, IL

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.  The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

   b)  4390 N Illinois Street, Belleville, IL

      i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.  No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

   c)  901 Mountain Avenue, Springfield, NJ

      i.     The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.   No access aisle was provided adjacent to one or more purportedly accessible spaces.

d)  98 US 22 Greenbrook, NJ

      i.     The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces;

      iv.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area; and

      v.    No access aisle was provided adjacent to one or more purportedly accessible spaces.

e)  481 US 1 Edison, NJ

      i.     The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iii.   One or more access aisles adjacent to a purportedly accessible parking space was less than 60 inches wide.

f)  1475 86th Street, Brooklyn, NY

      i.     The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.    One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

g)  355 Gateway Drive, Brooklyn, NY

      i.    Accessible route from parking space to the building was less than 36 inches wide;

      ii.    A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%;

      iii.    A curb ramp along the route to the entrance had a flare with a slope exceeding 10.0%; and

      iv.    No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

h)  194 N Route 17, Rochelle Park, NJ

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii.    No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

      iv.    One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

i)  6800 Miller Lane, Dayton OH

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii.    No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

j)  300 Mosside Boulevard, Monroeville, PA

      i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%;

       iii.    A portion of the route to the store entrance had a running slope exceeding 5.0%;

       iv.    A curb ramp located on the route to the building entrance had a cross slope exceeding 2.1%; and

       v.    One or more purportedly van accessible parking spaces and adjacent access aisles were too narrow.

   k)  460 Washington Road, Washington, PA

       i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

       ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%.

   l)  9395 McKnight Road, Pittsburgh, PA

       i.    The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

       ii.    The surfaces of one or more access aisles had slopes exceeding 2.1%.

24.    As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and safely use Defendant's facilities has been significantly impeded.

25.    Though Defendant has centralized policies regarding ADA compliance, Defendant's ADA compliance policies are inadequate in both their conception and implementation and are not reasonably calculated to make their facilities fully accessible to, and independently usable by individuals with mobility disabilities.

26.    Absent a change in Defendant's corporate policies, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated.

27.    As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff has a keen interest in whether public accommodations have architectural barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

28.     Although Plaintiff lives in Charleston, IL, approximately 50 miles from the Subject Property, Plaintiff frequently visits Champaign on the weekends.   Champaign is a local hub for shopping, recreation, education and business.  Plaintiff visits Champaign to, among other things, shop at its retail locations, including its big box stores, and to dine at its restaurants, including the Subject Property.

29.     Plaintiff intends to return to and dine at the Subject Property.

30.     Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA.  However, so long as Defendant's inadequate ADA compliance policy is in place, causing numerous architectural barriers at Defendant's facilities continue to exist, Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities.

31.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of her rights under the ADA.

## CLASS ALLEGATIONS

32.     Plaintiff brings this class action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at locations for which Defendant owns and/or controls the parking facilities.

33.     The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

34.     <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the members of the class.  The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

35.     <u>Common Questions of Fact and Law:</u>  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described.

36.     <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

37.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

<strong><u>SUBSTANTIVE VIOLATION</u></strong>

38.     The allegations contained in the previous paragraphs are incorporated by reference.

39.     Defendant's facilities were altered, designed, or constructed, after the effective date of the ADA.

10

40.     Defendant's facilities were required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C.§ 12183(a)(1).

41.     The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs.

42.     The architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. Section 12182(b)(2)(A)(iv).

43.     Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

44.     Defendant is required to provide individuals who use wheelchairs full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

45.     Defendant has failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

46.     Defendant has discriminated against Plaintiff and the Class in that it has failed to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

47.     Defendant's conduct is ongoing, and Plaintiff has been harmed by Defendant's conduct.

48.     Given that Defendant has not complied with the ADA's requirements to make their facilities fully accessible to, and independently usable by, individuals who use wheelchairs,

Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the class, prays for:

a.   A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.   A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to:  (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs;  (ii)  that Defendant change its corporate policy to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiffs shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c.   An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing her counsel as class counsel;

d.   Payment of costs of suit;

e.   Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.   The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: December 3, 2015                    Respectfully submitted,

*/s/* Matthew H. Armstrong
Matthew H. Armstrong #6226591
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd. No. 109
St. Louis MO 63144
Tel:    314-258-0212
matt@mattarmstronglaw.com

                    and

Benjamin J. Sweet (PHV to be submitted)
Stephanie K. Goldin (PHV to be submitted)
CARLSON LYNCH SWEET
 & KILPELA LLP
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
Tel:     412 322-9243
Fax:    412 231-0246
bsweet@carlsonlynch.com
sgoldin@carlsonlynch.com

Attorneys for Plaintiff and Putative Class